15089

ARCTIC ICE & COAL CO. *ET AL.* v. SOUTHERN ICE CO. *ET AL.*

(9 S. E. (2d), 38)

*Mr. Augustine T. Smythe,* for appellants,

*Messrs. Mitchell & Horlbeck* and *Stoney, Crosland & Pritchard,* for respondents,

May 20, 1940.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This is an action seeking the recovery of actual damages in the sum of $11,386.46, and punitive damages in the sum of $5,000.00, and is predicated upon an alleged fraudulent misrepresentation as to the net tonnage of ice produced and sold by the appellant, Southern Ice Company, for the year 1931, said fraudulent misrepresentation allegedly having been made by the appellant, James B. Mahoney, the president of and acting for Southern Ice Company, to respondents, and thereby inducing respondents to enter into a contract for the lease of the plant and properties of the respondent Arctic Ice & Coal Company, on a tonnage payment basis rather than a contract whereby appellant Southern Ice Company would have paid a flat and fixed rental therefor of $9,000.00 per annum in monthly installments of $750.00 for the first five years, and if the lease was renewed for an additional five years, at the rate of $2,000.00 per annum during the extended period.

From the rental under either contract there was to be deducted monthly, over a period of time, a sufficient amount

to repay a loan, with interest, to be made by Southern Ice Company to Arctic Ice & Coal Company.

Paragraph 6 of the complaint follows:

"6. The general tenor and combined effect of the several papers constituting the said Agreement entered into was that Southern Ice Company loaned Six Thousand Dollars ($6,-000.00) to Plaintiffs upon promissory notes bearing interest; the Plaintiffs agreed not to engage in the ice business in Charleston County for a period of ten (10) years to expire 17th March, 1942, the land on which Arctic Ice & Coal Company's plant was erected, together with the buildings, machinery and equipment, was leased to defendant, Southern Ice Company, for a period of Five (5) years, ending on the 31st day of March, 1937, at a rental of Two Hundred Dollars ($200.00) per month, with an option in Southern Ice Company to renew the lease for a further period of Five (5) years expiring 31st March, 1942, at the same rental, and Southern Ice Company was to pay the Plaintiffs each month an amount equivalent to ten per cent (10%) of the net ice tonnage of Southern Ice Company for the preceding month as defined in said Exhibit A, at the rate of Two & 50/100 Dollars ($2.50) per ton, deducting however from said amount the gross rentals provided for in the above lease and out of said rentals said Southern Ice Company was to deduct enough to repay to itself with interest the amount of the said loan of Six Thousand Dollars ($6,000.00) made by it to Plaintiffs, and Southern Ice Company allowed said W. H. A. Halsall to have the use of a portion of the property leased, to wit, the office, front platform and storage room to sell at retail on the platform ice to be sold to him for that purpose by Southern Ice Company at Three & 50/100 Dollars ($3.50) per ton, as will more fully and particularly appear from said Exhibits A, B, and C."

The complaint further alleges that in order to determine if it was advisable to enter into the contract paying a fixed

amount as above indicated, or the one providing for the payment of $2.50 per ton upon 10% of the net output of Southern Ice Company, and lacking any basis upon which to calculate and reach a conclusion, respondents inquired of the appellant, James B. Mahoney, acting as president of said Southern Ice Company, as to what was the output of said ice company for the preceding year, 1931; that respondents were informed by Mr. Mahoney that the net tonnage was 50,000 tons, which was intended to and did induce them (Arctic Ice and Coal Company) to enter into the tonnage contract; that respondents long thereafter learned that the net tonnage for the year 1931 was less than 45,000 tons, a fact known to appellants at the time when the parties to this action were negotiating as to the basis to pay under the rental contract.

Paragraphs 16, 18, 19 and 20 of the complaint read:

"16. That if Plaintiffs had known that the net tonnage stated and represented by Defendants was not truly stated but was less than as stated and represented, Plaintiffs would not have entered into said contract on the *pra rata* and contingent basis above mentioned, but instead would have accepted Defendants offer to pay the flat sum of Nine Thousand Dollars ($9,000.00) per year, which was absolute, fixed and certain and not subject to any diminution from fluctuations or contingencies affecting the ice business."

\* \* \*

"18. That the Defendants, in their dealings with Plaintiffs in the said transaction, further reported to Plaintiffs on occasions as the correct output of ice tonnage figures which were not the correct tonnage, as for instance in the statement of tonnage made by Defendants to Plaintiffs for the months of May, July, and August, 1936, the Defendants reported to Plaintiffs as the correct tonnage as follows:

| 1936 May | 5,601.33 tons |
| 1936 July | 4,364.60 tons |
| 1936 August | 4,254.51 tons |

whereas by an audit had at the instance of Plaintiffs about

June 2, 1939, it was revealed and Plaintiffs learned for the first time that the correct figures for said months were:

```
1936 May ................5,676.33 tons
1936 July ................5,253.35 tons
1936 August ..............4,564.76 tons
```

exhibiting a difference or shortage as follows:

```
1936 May ............. 75.00 tons short
1936 July ..............888.75 tons short
1936 August ...........310.25 tons short
```

"Net shortage for three months 1,274.00 tons, upon which on the contract basis of $2.50 per ton on 10% of such tonnage, Plaintiffs were wrongfully deprived of Three Hundred and Eighteen & 50/100 Dollars ($318.50), which they would never have discovered but for such audit.

"19. In like manner in the invoice rendered Plaintiffs under date of August 31st, 1935, of the amount charged Plaintiffs by Defendants for ice furnished to Plaintiffs under Exhibit 'C' above referred to, Plaintiffs were charged for 93.30 tons @ $3.50, $419.85, when the true amount was only $326.55, making an overcharge against Plaintiffs of $93.30.

"20. That by reason of the false and fraudulent misrepresentations of the Defendants these Plaintiffs have lost and been damaged in the sum of Eleven Thousand and Three Hundred and Eighty-six & 46/100 Dollars ($11,386.46) actual damages * * *."

The appellants moved before the Honorable Wm. H. Grimball, resident Judge of the Ninth Circuit, for an order requiring the respondents "to make their complaint more definite and certain in the following particulars, the ground of said motion being that the allegations of the complaint are so indefinite and uncertain that the precise nature of the charge is not apparent:

"(a) By setting out in paragraph 20 of the said Complaint how the amount of Eleven Thousand Three Hundred Eighty-six and 46/100 Dollars ($11,386.46) therein

alleged as the actual damages suffered by the Plaintiffs is arrived at, and the items going to make up such alleged loss."

This motion was refused, and this appeal followed. Digressing for the moment, we learn from the "appendix" that appellants have applied for and obtained an *ex parte* order extending the time to answer to the complaint.

When the notice of appeal was presented to counsel for respondents, they accepted service thereupon, using the following language: "Without prejudice to Plaintiff's position that the order is not appealable service of within notice acknowledged at Charleston, S. C., this 6th day of February, 1940."

The questions involved in this appeal are: (1) Is the order appealable? and (2) Does the complaint advise the appellants of the issues they will be called upon to meet?

Appellants and respondents have cited a number of cases in which it has been held by this Court that an order refusing a motion to make a complaint more definite and certain is not appealable before final judgment unless it involves the merits. We will not attempt to harmonize the array of cases on this subject, since each case must depend upon the allegations of the particular complaint or pleading under consideration. Hence, any attempt to reconcile the holdings in the various cases involving the questions herein raised would be a work of supererogation.

We think, speaking generally, the real test as to when the merits are involved and the pleader required to make his complaint or pleading more definite and certain is, whether the allegations thereof are sufficient to advertise to the opposing party of the issues he will be called upon to meet.

Although the matter is not before the Court on this appeal, it may be noted that Paragraphs 18 and 19 of the complaint, hereinbefore quoted, were the subject of a motion to strike before the Circuit Judge, and that there appears to be no relation between the items of loss or damage asserted

in these paragraphs and the claim upon which the complaint is grounded, to wit, a claim stated by the plaintiff to be one for actionable fraud in connection with the making of the original contract between the parties.

Reverting to the primary issue before this Court, to wit, whether an appeal will lie from the order of the Circuit Judge refusing to require that the complaint be made more certain and definite, on the ground that the allegations of the complaint are so indefinite that the precise nature of the charge is not apparent because of the alleged inability of appellants to determine from the complaint how the item of $11,386.46, which is expressed in Paragraph 20 of the complaint to be the amount of actual damages sustained, is arrived at, we are satisfied that no appeal lies from the order of the Circuit Judge, because the order does not affect the merits.

The contentions of the appellants are not directed to any alleged insufficiency of the allegations of the complaint to apprise them of the grounds of the action, either with respect to the nature of the alleged fraud upon which the respondents rely, or with respect to the general character of the damages which the respondents claim to have sustained. Their objection to the complaint appears to be founded upon the contention that they are unable, by mathematical calculation based upon the allegations of the complaint, to understand how the precise amount of damages specified in the prayer for relief is arrived at. They say that their inability to reconcile the figures stated in the body of the complaint with the amount of damages claimed places them at a disadvantage in the preparation of their defense.

We are unable to perceive any force in this contention. The contracts involved in the transaction in question are adequately set forth. The nature of the alleged fraudulent misrepresentations and inducements upon which the respondents will rely is plainly stated. The figures upon which the respondents rely relate to matters of which the appellants have full knowledge, and which will be shown to be cor-

rect or incorrect by the books and records of the appellants themselves. The damages, if any, to which the respondents may be entitled are of course to be determined by the jury under proper instructions from the Court, and it will be wholly immaterial in the trial of the case if it develops that there is a discrepancy between the amount claimed in the prayer for relief and the amount deducible from the specifications of damage that are properly provable.

In the light indicated it is apparent that the refusal of the motion to make the complaint more certain and definite does not affect the merits of the case, or deprive the appellants of any substantial right in the conduct of the litigation.

This conclusion dispenses with the additional question presented by the record.

Appellants should pay for printing only that part of the "appendix" to which reference has herein been made.

The appeal is dismissed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES FISHBURNE and STUKES concur.

MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL disqualified.